CALLAHAN, Circuit Judge,
dissenting:
I respectfully dissent. The majority, after properly noting that we do not reweigh the evidence when reviewing the denial of a motion for new trial, proceeds to do exactly that.
The majority’s description of the evidence is a combination of misdirection and re-weighing of the evidence. It starts by commenting on Arekat’s “calm and cooperative” attitude when arrested and his unexceptional subsequent behavior. Of course, the defendants in detaining Arekat did not rely on his behavior when or after he was detained.
The majority then attempts to explain away Arekat’s suspicious behavior by noting that he owned a security company and characterizing his interviews with the FBI as not containing any “act, attempt or threat.” However, reasonable minds could consider Arekat’s ownership of a security company with access to firearms a reason to be concerned with Arekat’s aberrant behavior. Moreover, the FBI’s report did describe a threat: it stated that “Arekat alluded that he might kill [ ] if this harassment continued and he slept with his ‘finger on the trigger.’ ” Indeed, it appears that Arekat’s own statements to the FBI were one of the reasons the FBI reported Arekat to the Health Suicide and Crisis Hotline.
The majority proceeds to sanitize the evidence by determining that Engle “was not a reliable source.” The majority feels competent to make this credibility determination based on the facts that Engle “had several recent criminal convictions,” “was a long time drug addict,” and “was engaged in a wage dispute with Arekat.” It conveniently ignores that both the FBI and the Honolulu Police Department conducted lengthy interviews with Engle. They determined that Engle was credible and that his concerns complemented the agencies’ concerns that were based on Arekat’s comments and actions. Also, Engle testified at the trial so the jury was able to make its own determination as to his reliability and credibility. The fact that the majority does not find the evidence as compelling as the jury did does not justify the majority’s re-weighing of the evidence.
Finally, perhaps uncomfortable with its revision of the evidence, the majority seeks to bootstrap its conclusion by asserting that Engle’s information was not — as a matter of law — sufficient to invoke “the emergency mental health examination and hospitalization statute” because some of the events related by Engle “took place moi’e than a month before Arekat’s ar *165 rest.” It then, consistent with its comfort with re-weighing the evidence, discounts Engle’s other allegations as concerning “a minor physical confrontation that at most warranted an investigation as a minor criminal offense.” This characterization is necessary because otherwise the agencies moved promptly as Arekat was detained— as the majority admits — three days after Engle’s confrontation with Arekat. Surely, this is not an unreasonable amount of time for police officers to consider and investigate information provided by a person whom the majority claims is “not a reliable source” before detaining Arekat.
The real harm worked by the majority’s decision is not just its impact on the officers involved, but in leaving police officers no safe course. If the officers had done nothing and Arekat had proceeded to shoot someone, defendants undoubtedly would have been sued for failing to detain Arekat. One of the officers explained in her deposition that this case reminded her of a prior case in which the police had not removed a firearm from a person who exhibited signs of paranoia, and that person had used it to kill a person, resulting in a huge civil liability for the police department and the city. In this case, the defendants made a courageous decision to detain Arekat. After considering all the evidence presented during a full trial, a jury found that the officers had probable cause to believe that Arekat was dangerous to himself or others. The jury’s verdict was reasonable and should not be set aside because two appellate judges, on the cold record, would have weighed the evidence differently. Accordingly I dissent.